## F. C. Rutan v. Lagonda National Bank.

1. COURTS—*The Statute in Regard to Place of Meeting Construed.*— What is meant by the statute in regard to the places in which the courts of the various counties of the State shall meet, is that said courts shall be held in the public court house or public court houses provided by the authorities for the holding of court, and commonly known and designated as the place or places set apart for such purpose; and the practice prevailing in Cook county of transacting a part of the business of the civil courts in what is known as the "Criminal Court building" is perfectly legal and proper.

2. INJUNCTIONS—*Power to Approve Bond Can Not be Delegated.*— The statute plainly requires that in all cases in which bonds are required as a condition precedent to the issuing of a writ of injunction, the surety shall be approved by the court, judge or master granting or ordering the injunction, and this duty can not be delegated to the clerk. And where the court orders that a bond be given, a bond approved by the clerk is not sufficient to support the injunction and it will be set aside on appeal.

Injunction.—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed October 11, 1897.

ALDRICH, REED, FOSTER & ALLEN, attorneys for appellant.

FARSON & GREENFIELD, attorneys for appellee.

PER CURIAM.

This is a suit brought by the complainant, the Lagonda National Bank, a citizen of the State of Ohio, against Allan R. Jewett, Isaac M. Sowers, Frank C. Rutan and W. B. Pummill, all the Safety Deposit Vault Companies of Chicago, James N. Young and James N. Young & Company, in the nature of a creditor's bill, founded upon a judgment against the first four parties named, and praying for an injunction restraining the said four parties from disposing of, transferring, assigning or incumbering any real estate in

their hands, and from collecting any debts due to either of them, including money deposited in any bank, and from drawing or removing any money or papers from any safety deposit vault in the city of Chicago, and from assigning and transferring or surrendering property of any kind or description belonging to either of them, or from surrendering or assigning any policy of insurance upon their lives. The bill further prays that Frank C. Rutan may be enjoined from selling, assigning, incumbering, etc., the certain shares of stock of James N. Young & Co., alleged in the bill upon information and belief to belong to him, and that the said company be restrained from transferring said stock upon its stock books; and that the Safety Deposit Vault Companies be restrained from allowing the defendants Jewett, Sowers, Rutan or Pummill, or any or either of them, to take from or remove from their said vaults any papers, money or effects of whatever character.

Attached to this bill were the following affidavit and indorsements:

"STATE OF ILLINOIS, ⎱ ss.
  Cook County. ⎰

On the eleventh day of March, one thousand eight hundred and ninety-seven, personally came before me C. W. Greenfield, who, being duly sworn, saith that he is the attorney and solicitor of the Lagonda National Bank, the above named complainant; that he has read the foregoing bill of complaint and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters and things therein stated to be upon information and belief, and as to these matters he believes it to be true.

C. W. GREENFIELD.

Subscribed and sworn to before me this 27th day of March, A. D. 1897.

BENJAMIN F. LANGWORTHY,
Notary Public.

I have examined the foregoing bill and affidavit and recommend that an injunction issue as prayed.

EDWARD A. DICKER,
Master.

Let a writ of injunction issue restraining the defendants, as prayed in the bill of complaint, on complainant giving bond conditioned as provided by law in the sum of five hundred dollars, with surety to be approved by the clerk of this court.

JOHN GIBBONS, Judge.

Master's fees, $5.00. Paid by Compl't.

E. A. DICKER, Master."

The injunction was issued without notice to any or either of the defendants, as prayed for in the bill of complaint, and from the order granting the injunction the defendant, Frank C. Rutan, has prayed a several appeal and perfected it in this court. The order was made by his honor, Judge Gibbons, while assigned to the Criminal Court of Cook County, and under circumstances which have not yet been passed upon by this court. Judge Gibbons had made it his custom while presiding in the Criminal Court, to convene each morning in his Criminal Court room, in the Criminal Court building of Chicago, a branch of the Circuit Court, a minute clerk of the Circuit Court, and a deputy sheriff being present, and then to pass upon such civil motions as the attorneys presented, at the conclusion of which hearing he would cause the Circuit Court to be adjourned and proceed with the criminal business from the same bench. On the day upon which the order in this case was made, he, pursuant to this arrangement, heard a number of contested motions which would properly be upon his calendar while serving as a judge of a branch of the Circuit Court. This hearing took place in the Criminal Court building, in the room assigned to him as a judge of the Criminal Court, and it was during the call of these motions and pending the discussion thereof that he signed his name and the word "Judge" thereafter to the order entered in blank on the bill of complaint, which is the order appealed from. After the hearing of the contested motion calendar, having adjourned the Circuit Court, he turned his attention to his duties as judge of the Criminal Court, and conducted the business thereof pursuant to law.

It is insisted that because Judge Gibbons, by whom the injunction was issued, had, at the time of the action taken by him, been assigned to the Criminal Court, and was at the time of issuing the injunction actually in the Criminal Court building, he had no jurisdiction to issue the injunction.

Section 3 of an act to revise the law in relation to Circuit Courts, approved February 18, 1874, provides:

" The Circuit Courts of the several counties in this State shall be held in the court houses of such counties, except as otherwise provided by law; and the Superior Court of Cook County shall be held in the court house in the county of Cook, except as otherwise provided by law."

Section 2 of an act to revise the law in relation to the Criminal Court of Cook County, approved February 12, 1874, provides:

" The said court shall be held in the court house of the county of Cook, or in such other place at the county seat as may be provided therefor."

The contention of appellant in effect is, that the words of the statute, "the court house" must be construed as indicating but one court house, and that in the county of Cook all civil business must be transacted in the court house in which the majority of the civil business is transacted, from which it would follow that the criminal business must be transacted in the court house in which the principal part of the criminal business is transacted.

We do not think any such narrow interpretation is to be given to the law. What is meant by the statute is that the courts of record of this county shall be held in the public court house, or the public court houses provided by the authorities for the holding of court, and commonly known and designated to be used for such purpose.

Ever since the completion of the court house in the county of Cook, known as the Criminal Court building, a portion of the business of the civil courts has been transacted there. For a time all the sessions of the County Court were there held, and to this day a portion of the

business of that court is there transacted. So, too, since the completion of the present Criminal Court building, at least two of the judges of the Superior Court have had their regular rooms for the transaction of the business of that court in that building. Nor have, since the completion of the Criminal Court building, all criminal trials been held in the building known as the court house for the transaction of criminal business. The action of the public authorities charged with the duty of providing rooms for the holding of court, and of the courts, has been such that for many years courts for the transaction of civil business have been held in either of said court houses, as the convenience of the public and the necessities of the court might demand.

The case at bar is entirely different from that of U. S. Life Insurance Co. v. Shattuck, 57 Ill. App. 382; 159 Ill. 610. In the present case Judge Gibbons was not holding a session of the Criminal Court when he issued the injunction under consideration, but upon that morning, as was his custom each morning, he, as he properly might, and as other judges did, convened a branch of the Circuit Court for the transaction of civil business in the building known as the Criminal Court building. There were present a clerk of the Circuit Court and a bailiff, an officer of the sheriff of Cook county, so that in all respects the Circuit Court was properly convened and in session ready for the transaction of civil business.

It is also assigned as error that the court did not approve the surety on the injunction bond, but ordered that such surety should be approved by the clerk. The record shows that the bond was approved only by the clerk. The statute plainly requires that in all cases in which bonds are required as a condition precedent to the issuing of a writ of injunction, the surety shall be approved by the court, judge or master granting or ordering the injunction. 2 S. & C. Stat., Chap. 69, Secs. 8, 9 and 10.

In the case of an injunction to restrain the enforcement of a judgment, section 8 imperatively requires that the

complainant shall execute a bond to the plaintiff in the judg-
ment.    Section 9 is as follows :   " In all other cases, before
an injunction shall issue, the complainant shall give bond
in such penalty and upon such condition, and with such
security as may be required  by the court, judge or master
granting or ordering the injunction, *provided*, bond need
not be given when, for good cause shown, the court, judge
or master is of opinion that the injunction ought to be
granted without bond."

The fact that in the present case the judge ordered that
a bond should be given, is conclusive that it was not his
opinion that the injunction ought to be granted without
bond.    The case, therefore, is one in which a bond was
required by law.    The clerk was not authorized by statute to
approve the security, and the judge, whose duty it was, by
the statute, to approve the surety, was powerless to author-
ize the clerk so to do.    The statute of 1845 provided that,
on appeals from the Circuit to the Supreme Court, the party
appealing should " give bond with sufficient security, to be
approved by the Circuit Court."    Rev. Stat. 1845, Chap.
83, Sec. 47.

In Abraham v. Huntington et al., 19 Ill. 403, and in
Henderson v. Fitch et al., Ib. 404, the court dismissed the
appeals on motion, for the reason that the appeal bonds
were not approved by the trial court, but by the clerk,
expressly holding that the power vested in the court by the
statute to approve an appeal bond, could not be delegated
to the clerk.

Section 122 of the act of 1874, in relation to courts, is as
follows :

" Appeals may be taken from the final orders, judgments
and decrees of the County Courts to the Circuit Courts of
their respective counties in all matters, except as provided
in the following section, upon the appellant giving bond
and security in such amount and upon such conditions as
the court shall approve," etc.

The County Court granted an appeal, fixed the penalty
of the bond and the time within which it should be filed,

but ordered the clerk to approve the security, which he did. On motion the appeal was dismissed in the Circuit Court, and, on appeal to the Supreme Court, the judgment of the Circuit Court was affirmed, the Supreme Court holding that only the Circuit Court had power to approve the bond, and that it could not delegate that power to the clerk. Bowlesville M. & M. Co. v. Pulling, 89 Ill. 58.

We think it clear that if the defective bonds given in the cases cited were insufficient to support the appeals, the similarly defective bond in the present case is insufficient to support the injunction.

Order reversed and cause remanded.