## Arthur L. Farwell, Appellee, v. Herbert Horton, Appellant.

### Gen. No. 9,380.

Opinion filed October 11, 1939.

Runyard & Behanna, of Waukegan, for appellant; William R. Behanna and Fred B. Meyer, both of Waukegan, and V. William Briddle, of Highland Park, of counsel.

Tenney, Harding, Sherman & Rogers, of Chicago, for appellee; George T. Rogers and George B. Rogers, both of Chicago, of counsel.

Mr. Presiding Justice Dove delivered the opinion of the court.

On and for several years prior to January 30, 1937, A. L. Farwell was engaged in the production, sale and distribution of milk and dairy products, conducting his business under the name of Spinney Run Farms near Libertyville, Illinois. On that day he and Herbert Horton entered into a written contract by the provisions of which Horton became an employee of Farwell as a milk driver and route salesman for one year at a weekly salary of $26 and 5 per cent commission on retail sales and 3 per cent commission on wholesale collections made by him. The contract of employment contained the following provisions: ''It is understood that the employment includes (among other things) the distributing of dairy products and the soliciting of customers for the sale thereof; and in consideration of such employment, the employee agrees that for a period of six months after the termination of this employment, he will not for himself or for any other employer distribute any dairy products or solicit any customer ... for the sale of any dairy products in any part of any town or city within which in the course of this employment he shall have distributed any dairy products or solicited any customer for the sale thereof.'' On Sunday morning, shortly after midnight, of April 24, 1938, Horton left Farwell's employment and on April 28, 1938 Farwell filed the instant complaint in the circuit court of Lake county to enjoin and restrain

Horton from persuading or inducing other milk drivers to break their contracts of employment with him and from, in violation of his contract with Farwell, selling or offering for sale milk or other dairy products within the territory mentioned in the contract. Upon notice to defendant, a hearing was had and on the same day a preliminary injunction was awarded as prayed without requiring a bond from the plaintiff. Among other things the order found that the plaintiff, at the time the complaint was filed, had more than one thousand regular milk customers, that the provisions of the contract of January 30, 1937 were valid and enforcible, that Horton, in violation of the provisions of that contract, had discontinued his employment with the plaintiff and had entered into the employment of another who was engaged in the milk and dairy business in competition with the plaintiff and that while so employed by the competitor of the plaintiff the defendant had solicited several of plaintiff's customers and had induced or attempted to induce several other drivers of the plaintiff to violate their employment contracts with the plaintiff.

On the same day counsel for Horton entered his appearance as defendant's attorney and filed a motion to vacate the order awarding a preliminary injunction on the ground that defendant was unable to obtain counsel and did not have sufficient notice of the hearing. On April 28, 1938 this motion was continued for hearing until the next day and after two other continuances the motion was heard and on May 4, 1938 denied. At that time the chancellor directed the plaintiff to file a bond in the penal sum of $1,000 to be approved by the clerk within three days thereafter, which was done on May 7, 1938 with the New Amsterdam Casualty Company as surety, which was duly approved by the circuit clerk.

On May 28, 1938 the plaintiff filed his sworn petition, accompanied by several affidavits, praying for a rule

to show cause why the defendant should not be held in contempt of court for violating the terms of the preliminary injunction. To this petition the respondent filed an answer, in which he admitted the issuance and service of the writ of injunction but denied disobeying that order or that he has been guilty of contempt as in the petition charged. On June 2, 1938 an amended and supplemental petition was filed, a hearing was had and on the following day the chancellor entered an order finding that respondent, since the issuance and service of the preliminary injunction had continued in wrongfully and unlawfully soliciting the customers of the plaintiff for the purpose of inducing them to cease using and purchasing milk and dairy products of the plaintiff and to use and purchase the dairy products furnished by respondent or the dairy represented by him, within the cities and towns specified in the writ of injunction. The chancellor thereupon sentenced the defendant to the Lake county jail for 120 days and imposed upon him a fine of $500. On the same day, on defendant's motion, the amount of the appeal bond in case of an appeal was fixed at $2,000.

On June 22, 1939 the present counsel for defendant entered their appearance in this cause and filed two motions in this cause, one to vacate and set aside the order of June 3, 1938 finding the defendant guilty of contempt and the other motion for a new trial. On June 22, 1938 both motions were heard and denied and this appeal followed.

Counsel for appellant contends that in this case the statute required the plaintiff to give a bond preliminary to the issuance of the injunction unless for good cause shown the court was of the opinion that the injunction ought to be granted without bond. Such are the provisions of the statute (Ill. Rev. Stat. 1937, ch. 69, §§ 9, 10 [Jones Ill. Stats. Ann. 109.357, 109.358]). The record in this case discloses what transpired at the time the preliminary writ was ordered to issue and the

court stated that he would not require a bond of the plaintiff at that time. The issuance of the writ was not conditioned upon the plaintiff giving a bond and when appellee did file a bond on May 7, 1938 and it was approved by the clerk, the filing and approval thereof was in strict compliance with the order of the court entered on May 4, 1938. Counsel for appellant argue, however, that the clerk had no authority under the statute to approve the security on the injunction bond and cite *Rutan v. Lagonda Nat. Bank,* 72 Ill. App. 35. Under section 10 of said ch. 69 of the statutes [Jones Ill. Stats. Ann. 109.358], the court should have approved the security and in *Rutan v. Lagonda Nat. Bank, supra,* it appeared that the order directing the clerk to issue the preliminary writ of injunction provided that it should issue upon complainant giving a bond conditioned as provided by law in the sum of $500 with surety to be approved by the clerk of the circuit court and the court held that the clerk was not authorized by statute to approve the security, that the bond was therefore defective and insufficient to support the issuance of the injunction. *Silver v. Smith,* 106 Ill. App. 411 was an action upon an injunction bond given in pursuance of an order by a judge of the circuit court of Champaign county, directing that a preliminary injunction issue conditioned that the complainant file a bond in the sum of $300. There was no reference in the order as to who should approve the bond and the bond was accepted by the clerk without the approval of the judge and the clerk issued the writ. In sustaining the judgment of the trial court, the court held that the complainant obtained the injunction upon the faith of the bond and in a proceeding to recover on that bond the parties who executed it ought to be estopped from setting up their own dereliction. In the instant case the injunction was not conditioned upon the giving of a bond. The purpose of course in requiring a bond at a later date was for the protection of the

defendant if he should suffer damage by reason of its obedience not if he violated it and the bond under the holding of the *Silver* case afforded him that protection. Furthermore in this proceeding appellant cannot raise this question. Where an injunction has been issued and contempt proceedings follow, the only questions for determination are whether the court had jurisdiction to issue the order and if it did whether that order has been violated. *Court Rose No. 12 F. of A. v. Corna,* 279 Ill. 605. Of course a party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make but if a court has jurisdiction of the parties and legal authority to render the order, then it must be obeyed even though it was erroneous or improvidently entered. *Leopold v. People,* 140 Ill. 552. In *Armour Grain Co. v. Pittsburgh, C., C. & St. L. R. Co.,* 320 Ill. 156, cited and relied upon by appellant, it was held that a party charged with contempt for violation of a judgment, order or decree may acquit himself by showing that such judgment, order or decree is a nullity: that the municipal court was not authorized by law to compel the defendant to answer certain interrogations which the court ruled the defendant to answer and therefore the defendant was not in contempt for refusing to comply with the order of the municipal court.

There is no merit in appellant's contention that appellant was convicted upon affidavits where the oath was administered in Cook county by notaries who resided in Lake county. Section 10 of ch. 99, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 90.11] expressly authorizes a notary to execute the duties of his office throughout the State, as long as he resides in the county in which he was appointed. Furthermore the record discloses that upon the hearing ten witnesses testified in open court and the finding of the court was warranted by their evidence, irrespective of the contents of the several affidavits which were submitted. Nor is there any merit in appellant's contention that

this cause was heard by two of the circuit judges instead of one. The record discloses that there was a full hearing before Judge Pierce, acquiesced in and participated in by counsel for appellant, who examined and cross-examined witnesses and it was at the conclusion of this hearing that Judge Pierce found appellant in contempt and rendered the judgment from which this appeal has been prosecuted.

It is finally insisted that the jail sentence and fine imposed are harsh and excessive and that the portion of the judgment imposing the fine is defective and incapable of performance inasmuch as it fails to designate the person to whom the fine is to be paid.

We have examined this record with care. The evidence discloses that appellant, at the time of the hearing, was 26 years of age and had attended Purdue University and knowingly executed the contract of employment with appellee, obligating himself not only to deliver dairy products to the customers of appellee but also to solicit new customers for him and to refrain from distributing dairy products or solicit customers for himself or for any other employer within the district of his employment for a period of six months after his employment with appellee terminated. Upon this hearing appellant admitted that for almost a month prior to the time he ceased to work for appellee, he violated the provisions of this contract and solicited appellee's customers on behalf of Cream Crest Farms, another dairy that had just been organized, and in whose success he was interested. While therefore appellant was ostensibly in the employ of appellee, he was deliberately engaged in destroying his business. On April 24, 1938 appellant resigned his employment but continued to solicit the customers of appellee and completely ignored and disregarded the injunctional order long after it was issued and appellant had notice thereof. The injunction was issued on April 28, 1938 and on that day appellant moved to set it aside. The affidavits of Katherine Gordon and

Martha Fisher are to the effect that on April 29, 1938 appellant called at the home of Fred Fairman, where they were employed, and requested affiant to assist him in persuading Mrs. Fairman to cease doing business with appellee and to patronize the Cream Crest Farms. Florence Herlan executed an affidavit to the effect that during the week of May 18, 1938 appellant called at her home and requested her to cease using milk furnished by appellee and instead use milk which he would furnish. She also testified in open court upon the hearing, as did also Ralph I. Farwell, John Jashelski, William Kleinschmidt, Harold Menefee and others and from all the testimony and the statements contained in the affidavits found in this record, no other conclusion can be arrived at than that appellant wilfully and deliberately disregarded the injunction issued on April 28, 1938, and the chancellor was justified in finding appellant guilty and imposing either a jail sentence, fine or both.

In *Hake v. People*, 230 Ill. 174, 82 N. E. 561, our Supreme Court stated: "The law is well settled that a court of chancery may impose a fine alone for the violation of an injunction and commit the party until the fine and costs are paid, or, in its discretion, may fix a definite period of imprisonment, either with or without a fine. The court granting the injunction is necessarily invested with large discretion in enforcing obedience to its mandate, and upon proceedings for attachment for its violation the extent of the fine and imprisonment to be inflicted as a punishment for the contempt rests in the sound legal discretion of the court itself. Courts of appellate jurisdiction are exceedingly averse to interfering with the exercise of such discretion, and will not ordinarily reverse the action of the inferior courts in such matters. High on Injunctions, sec. 1458, and cases there cited." In the instant case it appears from the order entered that the chancellor sentenced appellant to the common jail of Lake county for a period of 120 days and directed the jailer to receive

him and safely keep him in custody "until the expiration of the period of one hundred twenty days from the date of his commitment or until sooner discharged in due course of law, and that he pay a fine of five hundred dollars ($500.00)." Under the authority of *McDonald v. People*, 86 Ill. App. 558, and *People v. Saylor*, 238 Ill. App. 142, the latter portion of the order is defective in not stating to whom the fine was payable. The judgment order is severable and that portion of the order imposing a fine on appellant of $500 is reversed and in all other respects the order appealed from is affirmed.

*Order affirmed in part and reversed in part.*